## ROBERTS *et al. v.* MOORE *et al.*

Equity will not interfere to set aside a judgment or decree of a court having jurisdiction, even if the party against whom it was rendered was prevented from making his defense by fraud of the adverse party, unmixed with fraud or negligence on the part of ·the former, where it appears that the defense which he was thus prevented from making was not a good one.

Submitted March 2, — Decided March 28, 1901.

. Equitable petition. Before Judge Russell. Jackson superior court. February 6, 1900.

*J. A. B. Mahaffey* and *Pike & Ayers,* for plaintiffs.

FISH, J. J. A. N. Moore, as attorney in fact for Martha Moore, A. L. Terry, N. H. May, Margaret Duncan, Minnie Mack, and James Smith, and as next friend of John Deaton Jr., Hugh Deaton, and Rosa Deaton, and S. R. Moore, as attorney in fact for John Deaton, brought an equitable petition for the recovery of certain lands and the mesne profits of the same, and for injunction, against Cicero Roberts, G. W. Irwin, and others, in which they alleged that the lands sued for belonged to the estate of William Deaton, deceased ; that the persons named, in whose behalf J. A. N. and S. R. Moore respectively sued, were the heirs at law of said William Deaton, and, as such, the owners of and entitled to the possession of the lands sued for ; that Roberts, Irwin, and the other defendants were each illegally in possession of a designated portion of these lands. In this suit the plaintiffs obtained a verdict and decree against the several defendants, in which they recovered of each of the defendants, separately, a described portion of the lands and the mesne profits thereon. Subsequently Roberts and Irwin brought the present· action, the same being an equitable petition to set aside this verdict and decree, and, until the final hearing, to enjoin the plaintiffs therein from transferring or levying the executions issued thereon. They alleged that, some time before the time set for the hearing of the application for injunction in the case against them, they employed counsel to represent them, and that counsel on both sides agreed that the restraining order which had been granted should stand continued until the final hearing of the case ; and that they stated to counsel for the plaintiffs " that if he would examine the records in the ordinary's office, he would find that the allegations in the petition [of his clients]

were not true, to which said counsel replied that he had not had time to examine the records, but intended to do so, and if upon examination he found the averments not well founded, he would abandon the case, and petitioners would have no further trouble." They further alleged, that, just prior to the term of the court to which the case was returnable, their counsel examined "the dockets, records, and papers of the clerk's office, . . and found that said case had not been docketed, that the papers had never been returned and had not been recorded;" that their counsel was present at said term of the court, "ready to make answer, and that said case was not called, and again at the [trial term of the case], and still the case had not been docketed, nor the papers returned nor recorded, nor was said case called at any time" during that term of the court; and that just prior to the next ensuing term of the court "counsel examined the dockets, records, and papers of the clerk's office of said court, and found no trace of said case." They also averred that, immediately after the filing of the petition upon which the decree was rendered, the papers in the case were, by the counsel for the plaintiffs, taken out of the clerk's office "and continuously kept out of said office, kept off the docket and record until the February term, 1898, nearly eighteen months, for the purpose of misleading petitioners as to the continuous pending of said suit, and that during the last-mentioned term, without any notice to your petitioners or their counsel, the counsel for [the plaintiffs] had the clerk to turn back and docket said case at the foot of the bench docket, where cases for the February term, 1897, were docketed, and then had the presiding judge to mark said case continued by the plaintiffs," and immediately after this "took said papers from the clerk's office and continuously kept them out (they never having been recorded) until during the August term, 1898, at which term said counsel procured [the] verdict and decree" in question. They further alleged that the case had never been entered on the bar docket; and that, under the facts and circumstances set forth, they concluded that the counsel for the plaintiffs "had examined the records of the ordinary's office, and, finding that the charges in said petition could not be sustained, had, in accordance with his promise, abandoned said case." It was also alleged that "they had perfect and complete answer to each and every charge in said petition, and would have made and filed the same and saved themselves harmless, had

they not been misled and defrauded as hereinbefore set out;" and that "these petitioners and those under whom they claim have a perfect title to said property, as will appear by exhibit 'C' hereto annexed as part of this bill." The defendants in the present case demurred to the plaintiffs' petition, "on the ground that the allegations therein set forth no legal cause of action, and did not entitle plaintiffs to the relief prayed for. The court sustained the demurrer and dismissed the petition at plaintiffs' costs." To this judgment plaintiffs excepted.

The question for our consideration and determination is, did the court err in sustaining the demurrer to the petition in this case? Granting that the allegations of the petition show that Roberts and Irwin were, by the fraud of the counsel of the adverse parties, unmixed with fraud or negligence on their part, prevented from setting up their defense to the suit in which the verdict and decree were rendered against them, the case then depends upon the character of the defense which they were prevented from making. Unless they show that they had a good defense, a court of equity will not set aside the verdict and decree of which they complain. "Equity will interfere to set aside a judgment of a court having jurisdiction only where the party had a good defense of which he was entirely ignorant, or where he was prevented from making it by fraud or accident, or the act of the adverse party, unmixed with fraud or negligence on his part." Civil Code, § 4988. What was the defense which, for the reasons which they allege, they failed to make? Upon this subject, they allege that they "and those under whom they claim have a perfect title to said property, as will appear by reference to exhibit 'C'" annexed to their petition. We must then refer to this exhibit to ascertain what this "perfect title" was, upon which they relied to defeat the action against them by the heirs at law of William Deaton, deceased. Turning to this exhibit, we find that it shows: a notice and citation by the ordinary of Jackson county, dated Oct. 8, 1874, in which, after stating that Elijah Deaton, administrator of William Deaton deceased, had applied for leave to sell the real estate of said deceased, "all persons" are notified and required to show cause, on the first Tuesday in December thereafter, why such leave to sell should not be granted; copies of two advertisements by said administrator of the sale of described land belonging to the estate of his intestate, one of the

advertisements covering one tract of land and being undated, and the other covering this tract and another one, and being dated Aug. 28, 1875 ; a deed, dated Dec. 6, 1881, to a certain described tract of land, from Elijah Deaton, as administrator of William Deaton deceased, to Bester Allen, containing recitals usual in such deeds, among which is that the sale was had " by virtue of an order of the court of ordinary of Jackson county, granted at the regular December term, 1874," and that the sale was on the first Tuesday in December, 1881 ; a deed, dated Oct. 24, 1887, from Bester Allen to G. W. Irwin, conveying this same land; a deed, dated Dec. 5, 1888, to a described tract of land, from Elijah Deaton, as administrator of William Deaton deceased, to W. I. Pike, containing the usual recitals in administrators' deeds, among which is that the sale was by virtue of an order granted by the court of ordinary at the December term, 1884, and that the sale was on the first Tuesday in March, 1885; a deed from Elijah Deaton to N. C. Roberts, dated Feb. 12, 1889, purporting to convey the same land described in the deed just above mentioned.  So we find that the defense upon which Irwin relied was based on a deed from the administrator of William Deaton, deceased, to Bester Allen, and a deed from Bester Allen to Irwin; and that while the deed from the administrator to Allen recites that the land therein described was sold by virtue of an order of the court of ordinary, granted at the regular December term, 1874, no such order is shown.  We find that Roberts shows a deed from the administrator of William Deaton to W. I. Pike, which deed recites that the land therein described was sold by virtue of an order of the court of ordinary, granted at the December term, 1884, but fails to show either any such order or any deed out of Pike.  He does show a deed to himself from Elijah Deaton individually, executed subsequently to the deed from Elijah Deaton, as administrator, to Pike, which purports to convey the same land described in the administrator's deed; but he makes no attempt to explain the inconsistency in these two deeds, or to show how the title ever passed from the estate of William Deaton into Elijah Deaton.  The fatal defect in his showing of the defense which he alleges he had to the suit of the heirs at law of William Deaton is, that he shows that the land to which he claims he had a perfect title was sold by the administrator of William Deaton, as the property of his intestate, and fails to show any order of the

court of ordinary authorizing the administrator to sell it. The showing which Irwin makes of the defense which he alleges that he was prevented from making is fatally defective, for the same reason. The "perfect title" which he claims is based on a sale by the administrator of the estate of William Deaton, and he shows no order of the court of ordinary authorizing the administrator to sell. If the counsel for the plaintiffs in the suit in which the verdict and decree complained of were rendered, upon being referred by the plaintiffs in the present case to the records in the ordinary's office, found no more than they, from the exhibit to their petition, appear to have found, he was doubtless not convinced that they had a good defense to the suit which he had brought against them for his clients. "Where a party claims title to land under an administrator's deed, he must, in all cases, show the order of the court of ordinary, granting the administrator license to sell the land." *Clements* v. *Henderson,* 4 *Ga.* 148. "It is not sufficient that it is recited in the deed," but it must be produced. *Yahoola River Mining Co.* v. *Irby,* 40 *Ga.* 479. As the plaintiffs in this case seem, from the contents of the exhibit attached to their petition, to have undertaken to show the legality and regularity of the sales made by the administrator, it is to be presumed that they would have set out the order, or orders, of the court of ordinary, authorizing the administrator to sell the real estate of his intestate, if such an order, or orders, had ever been granted. One of the deeds set up in the exhibit recites that such an order was granted at the December term, 1874, and another recites that such an order was granted at the December term, 1884, and yet the plaintiffs produce no order authorizing the administrator to sell, passed at either of those terms, or at any other term, of the court. From these circumstances, there naturally arises a strong inference that no such order could be found by them. But whether there ever was such an order or not, we can only deal with the case as the plaintiffs have made it by their petition and the exhibits upon which they rely, attached thereto. So taking the case, the plaintiffs had no good defense to the suit in which the decree which they seek to set aside was rendered. For without authority from the court of ordinary to sell land belonging to the estate of his intestate, the administrator could not legally do so, and any sale thereof made by him was necessarily void, and those who purchased thereat acquired no title as against the heirs at law.

As the plaintiffs in error had no good defense, it matters not whether they were, or were not, prevented from making the defense upon which they relied, by the fraud of the adverse parties. The section of the Civil Code which we have quoted above is conclusive upon this point. It would be a vain and useless thing to set aside a judgment or decree, simply to allow the defendant to the suit in which it was obtained to make his defense thereto, when it appears that he has no legal defense to make. There was no error in sustaining the demurrer.

*Judgment affirmed. All the Justices concurring.*